UNITED STATES *v.* STONE & DOWNER CO. (No. 2080).

EVIDENCE, WEIGHT AND SUFFICIENCY.

Regarding an importation of naphthalene, which was dutiable at 15 per cent ad valorem under group II, section 500, Title V, act of September 8, 1916, plus $2\frac{1}{2}$ cents per pound under section 501, if having a solidifying point of 79° centigrade or above, but free of duty under section 500, group I, if having a lower solidifying point, two witnesses testified—a Government chemist, that the average of 10 tests he had made was a solidifying point of 78.998 and that, upon being called on for a C. V. R. report, another Government chemist reported that such naphthalene would be passed at New York as having a solidifying point below 79°; and a practical chemist for the importer that the average of 10 tests which he had made was a solidifying point of 73.74°. After the Government chemist had made his tests, a Treasury regulation was promulgated forbidding any allowance for error or variations, whereupon he reported a solidifying point of 79° or more. Duty was assessed accordingly, but the Board of United States General Appraisers sustained the importer's protest. This court is unable to say that the finding of the board was against the evidence or unsupported by it.

United States Court of Customs Appeals, June 1, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43986.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Waterhouse & Lockett* (*William E. Waterhouse* of counsel) for appellee.

[1] T. D. 38748.

[Oral argument May 5, 1921, by Mr. Lawrence.]

Before SMITH, BARBER, and MARTIN, Judges; DE VRIES, Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at Boston, Mass., found that 49 barrels of naphthalene imported at that port had a solidifying point of not less than 79° C., and accordingly assessed the naphthalene at 15 per cent ad valorem and with a special duty of 2½ cents per pound in accordance with the provisions of Title V, sections 500 and 501, of the act of September 8, 1916. Group II of section 500 and section 501, under which the assessment was made, in so far as pertinent to the case, are as follows:

SECTION 500 * * * DUTIABLE LIST

GROUP II. Amidonaphthol, * * * naphthalene having a solidifying point of seventy-nine degrees centigrade or above * * * 15 per centum ad valorem.

SEC. 501. That on and after the day following the passage of this act, in addition to the duties provided in section five hundred, there shall be levied, collected, and paid upon all articles contained in group II a special duty of 2½ cents per pound. * * *.

The importer protested that the solidifying point was less than 79° C., and that therefore the importation was free of duty under that part of section 500, group I, which reads as follows:

SECTION 500 * * * FREE LIST

GROUP I. Acenaphthene · * * * naphthalene having a solidifying point less than seventy-nine degrees centigrade * * * ° shall be exempt from duty.

The Board of General Appraisers sustained the protest and the Government appealed.

The naphthalene in question was imported on the 10th of October, 1918, and about that date the examining chemist for the Government at Boston tested the naphthalene to determine its solidifying point. The five readings of the first test of a portion of the sample taken resulted as follows: 79.02, 79.01, 79, 7.9, 79, or an average of 79.006 centigrade for the five readings. The five readings of a second test of another portion of the sample were as follows: 79, 79, 79, 79, 78.98, or an average of 78.99. The average of both the tests according to the chemist was 78.998.

Apparently Dr. Coburn who made the tests was in some doubt as to whether at 79 degrees the solidifying point was reached. He therefore submitted samples of the naphthalene to Dr. Pickerel, the Government chemist at New York, and asked for a C. V. R. report. Dr. Pickerel informed Dr. Coburn that the sample submitted would be passed by the New York officials as having a solidifying point of less than 79° C.

On the 30th of July, 1919, nine months after the merchandise was imported, the Treasury Department issued a regulation prescribing

the method of determining the solidifying point of naphthalene, and on the 4th of September, 1919, the importation was assessed for duty on the report of Dr. Coburn that the solidifying point was 79° or more. That report was not in accord with the C. V. R. report which the doctor himself had invited and from the fact that the doctor's report was made about a month after promulgation of the Treasury regulation and some eleven months after making his tests, it is fair to assume that his report was made solely because of a paragraph in the belated Treasury regulation forbidding the making of any deduction or allowance "as a tolerance or for unavoidable error or variations for different laboratories."

Although the assessment was made nearly eleven months after the entry and withdrawal of the merchandise for consumption, a sample of the naphthalene was still available which was procured by the importer from Dr. Coburn and sent sealed to Thomas H. Davis, a practical chemist, with instructions to test it in accordance with the recently issued Treasury regulations.

Thomas H. Davis testified for the importer that he had more than 40 years of practical experience as a chemist, especially with coal tar products, and that he tested the sealed sample in accordance with the Treasury regulations. The five readings of his first test were 73.8, 73.7, 73.7, 73.8, 73.8, an average of 73.76° C. The five readings of the second test were 73.8, 73.8, 73.7, 73.7, 73.7, an average of 73.74° C.

Considering that Dr. Coburn's tests for the Government, made soon after the importation of the naphthalene, showed a solidifying point of 79.006° C. for his first test and 78.99° C. for his second test; that a variation of less than seven-thousandths of a degree would have brought the first test below 79°; that Dr. Coburn was himself so much in doubt as to whether the solidifying point was at or below 79° C. that he invited a C. V. R. report on the matter; that that report furnished by Dr. Pickerel, the Government chemist at New York, stated that the naphthalene would be passed by the New York officials as having a solidifying point of less than 79°; that the C. V. R. report apparently stood accepted as final until the issuance of the Treasury regulation some nine months later; that no new test appears to have been made by the Government in accordance with the special Treasury regulation of July 30, 1919, and that such a test *was* made by the importer, which test showed a solidifying point of less than 79° C.; that the delay in making importer's test was due to no neglect on its part and that any change in the naphthalene was just as likely to operate to its disadvantage as to that of the Government; and finally that if no deduction or allowance is to be permitted "for unavoidable error or variations for different laboratories" under the Treasury regulations, Dr. Coburn's second test must be

preferred to his first, inasmuch as the second test more nearly accords with that made by the importer under the regulations—we must decline to disturb the board's finding that the weight of the testimony "on the whole clearly makes in favor of the protestant's claim."

The decision of the Board of General Appraisers is therefore *affirmed*.